United States Bankruptcy Court

Eastern District of Missouri

In re Paul Wojciechowski

And Mary Wojciechowski ) 16-42442

Judge K Suratt -States

_____

Creditors' Reply to June 14 2023 Motion to Strike and Response ( 577) on June 2023 Objection to discharge et al

Comes now the undersigned creditor and for the Response [1] and

1  While admitting par 3,4 8, 9, and 13 of the June 14 filing , Creditor disputes the remaing paragraphs , and calls the court's attention not only was it sworn but had the actual docket entry from Mo casenet on an ongoing new child support DSO which was not included in any amended schedules .

Debtors who did not address same should also be deemed to have conceded the fact bought the new est $30,000 VW motor vehicle not on any schedules should be treated as admitting the lack of good faith failure to meet the duties and the value of the vehicle at est $30,000[2]. They also did not dispute the missing information, wrong information, failure to timely update the

---

[1] In addition to noting rule 12 is for pleadings, which as in rule 7 are complaints and would not be a motion or objection.

[2] The court also should question any agreement that would seem to deprive creditors of a right to information especially where it for someone not to testify , as contrary to the ethical rules for lawyers in Mo rule 4 , which the undersigned understands if adopted as the code for the local federal court . As below same is contrary to the policy, and intent of the code .

schedules, the false claims on needing the insurance proceeds when had bought back the drivable damaged car, the incurring of debt such as attorneys fees for the two post 2016 modification of child support actions by debtor while earning est $100,000.

2. The undersigned also disputes the claims about the law .

A Instead when the undersigned checked 11 USC 11328 (h) in toto provides

(a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5);

(2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);

(3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime; or

(4) for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.

(b) Subject to subsection (d), at any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—

(1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

(3) modification of the plan under section 1329 of this title is not practicable.

(c) A discharge granted under subsection (b) of this section discharges the debtor from all unsecured debts provided for by the plan or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5) of this title; or

(2) of a kind specified in section 523(a) of this title.

(d) Notwithstanding any other provision of this section, a discharge granted under this section does not discharge the debtor from any debt based on an allowed claim filed under section 1305(a)(2) of this title if prior approval by the trustee of the debtor's incurring such debt was practicable and was not obtained.

(e) On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if—

(1) such discharge was obtained by the debtor through fraud; and

(2) the requesting party did not know of such fraud until after such discharge was granted.


and   11 USC  522 (q) provides:

(a) In this section—

(1) "dependent" includes spouse, whether or not actually dependent; and

(2) "value" means fair market value as of the date of the filing of the petition or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate.

(b)

(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, one debtor may not elect to exempt property listed in paragraph (2) and the other debtor elect to exempt property listed in paragraph (3) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (2), where such election is permitted under the law of the jurisdiction where the case is filed.

(2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.

(3) Property listed in this paragraph is—

(A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place;

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law; and

(C) retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

If the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d).

(4) For purposes of paragraph (3)(C) and subsection (d)(12), the following shall apply:

(A) If the retirement funds are in a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination is in effect as of the date of the filing of the petition in a case under this title, those funds shall be presumed to be exempt from the estate.

(B) If the retirement funds are in a retirement fund that has not received a favorable determination under such section 7805, those funds are exempt from the estate if the debtor demonstrates that—

(i) no prior determination to the contrary has been made by a court or the Internal Revenue Service; and

(ii)

(I) the retirement fund is in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986; or

(II) the retirement fund fails to be in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986 and the debtor is not materially responsible for that failure.

(C) A direct transfer of retirement funds from 1 fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986, under section 401(a)(31) of the Internal Revenue Code of 1986, or otherwise, shall not cease to qualify for exemption under paragraph (3)(C) or subsection (d)(12) by reason of such direct transfer.

(D)

(i) Any distribution that qualifies as an eligible rollover distribution within the meaning of section 402(c) of the Internal Revenue Code of 1986 or that is described in clause (ii) shall not cease to qualify for exemption under paragraph (3)(C) or subsection (d)(12) by reason of such distribution.

(ii) A distribution described in this clause is an amount that—

(I) has been distributed from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986; and

(II) to the extent allowed by law, is deposited in such a fund or account not later than 60 days after the distribution of such amount.

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in paragraph (1) or (5) of section 523(a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in such paragraph);

(2) a debt secured by a lien that is—

(A)

(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not void under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed;

(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution; or

(4) a debt in connection with fraud in the obtaining or providing of any scholarship, grant, loan, tuition, discount, award, or other financial assistance for purposes of financing an education at an institution of higher education (as that term is defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)).

(d) The following property may be exempted under subsection (b)(2) of this section:

(1) The debtor's aggregate interest, not to exceed $15,000?[1] in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

(2) The debtor's interest, not to exceed $2,400?1 in value, in one motor vehicle.

(3) The debtor's interest, not to exceed $400?1 in value in any particular item or $8,000?1 in aggregate value, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(4) The debtor's aggregate interest, not to exceed $1,000?1 in value, in jewelry held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(5) The debtor's aggregate interest in any property, not to exceed in value $800?1 plus up to $7,500?1 of any unused amount of the exemption provided under paragraph (1) of this subsection.

(6) The debtor's aggregate interest, not to exceed $1,500?1 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

(7) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract.

(8) The debtor's aggregate interest, not to exceed in value $8,000?1 less any amount of property of the estate transferred in the manner specified in section 542(d) of this title, in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent.

(9) Professionally prescribed health aids for the debtor or a dependent of the debtor.

(10) The debtor's right to receive—

(A) a social security benefit, unemployment compensation, or a local public assistance benefit;

(B) a veterans' benefit;

(C) a disability, illness, or unemployment benefit;

(D) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

(11) The debtor's right to receive, or property that is traceable to—

(A) an award under a crime victim's reparation law;

(B) a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(C) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(D) a payment, not to exceed $15,000,1 on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or

(E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

(12) Retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

(e) A waiver of an exemption executed in favor of a creditor that holds an unsecured claim against the debtor is unenforceable in a case under this title with respect to such claim against property that the debtor may exempt under subsection (b) of this section. A waiver by the debtor of a power under subsection (f) or (h) of this section to avoid a transfer, under subsection (g) or (i) of this section to exempt property, or under subsection (i) of this section to recover property or to preserve a transfer, is unenforceable in a case under this title.

(f)

(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5); or

(B) a nonpossessory, nonpurchase-money security interest in any—

(i) household furnishings, household goods, wearing apparel, appliances, books, animals, crops,

musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(iii) professionally prescribed health aids for the debtor or a dependent of the debtor.

(2)

(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

end of quote

as such it is submitted there would be good faith to believe can revoke a discharge for fraud under 1328 H it would logically be a proper basis for an objection .

B . This is even more so where Debtor's

only cited case In Re Holman, 567 BR 599 ( Kan 2017) and 594 BR 769 ( D Kan 2018) is not binding on this court where not even in the 8th Circuit, Kansas being in the 10th Circuit, it is not widely followed , and as even noted in Holman itself other court decisions are not in accord . As noted in Holman, there is a contrary Northen Indiana case

..In In re Wheeler,[31] the debtors made payments for 36 months and the time period ran "which would ordinarily result in a request for the entry of a discharge."[32] Instead, the trustee filed a motion to dismiss "because the debtors did not disclose significant changes in their income during the life of the plan."[33] The Bankruptcy Court for the Northern District of Indiana noted that "[t]he proper functioning of the bankruptcy system depends upon the complete and accurate disclosure of information concerning the debtor's assets, liabilities, income, expenses and financial affairs."[34] The court concluded that debtors should have disclosed this material information and granted the trustee's motion to dismiss.[35]503 B.R. 694 (Bankr. N.D. Ind. 2013).

End of quote

There was also Washington case :

..In In re Teeter,[36] the trustee moved to dismiss the case in the 60th month of the debtors' plan because the debtors had failed to provide the trustee with copies of their tax returns until the 58th

month. When the trustee received the tax returns, the debtors' income had increased over the life of the plan by more than $113,000. The Bankruptcy Court for the Western District of Washington originally concluded that although the failure to turn over the returns was problematic, the trustee's failure to raise the issue until the end of the case was more problematic. Upon a motion for reconsideration, the court concluded that it had committed clear error. The court found that pursuant to the confirmation order confirming the debtors' plan, the debtors had an independent duty to disclose any changes in income during the life of the plan. The court found that it should have previously considered that duty. Finding that the debtors brought the situation on themselves and that they had paid nothing to their unsecured creditors, the court ordered the trustee to submit its motion to dismiss again No. 11-49800-BDL (Bankr. W.D. Wash. 2017) (unpublished).

End of quote

Even more so there is a May 2022 Pa case, In re Reppert,

643 BR 828 - Bankr. Court, WD Pennsylvania, 2022 citing In re Holman, 567 BR 599 (Bankr. D.

Kan. 2017), aff'd, Davis v. Holman (In re Holman), where as here the debtor bought a luxury

vehicle and did not disclose it to the contrary . As stated there on a very similiar case where

did not disclose a new car :


The failure to timely disclose post-petition assets in chapter 13 cases is the concealment of property of the estate and, therefore, must carry heavy consequences no matter how late in the case it occurs. It is undisputed that Laura L. Reppert ("Debtor") took title to an unencumbered 2021 BMW 235 automobile (the "BMW") in March 2021, approximately four years into her chapter 13 case, but did not inform the Court or chapter 13 trustee.[1] Instead, the existence of the BMW was revealed nearly a year later by the Debtor's husband in his own bankruptcy.[2] This prompted an evidentiary hearing on an Order to Show Cause why, among other things, the Debtor's now-completed chapter 13 case should not be dismissed with prejudice for her failure to promptly disclose a substantial post-petition asset.[3] The Debtor primarily argues that the BMW was an early birthday gift from her parents to her then 14 year old daughter.[4] For the reasons set forth below, the Court is unconvinced, leaving a dismissal with prejudice the only appropriate outcome under these unusual circumstances...

From the outset, the Court must address the elephant in the room: the Debtor has completed all payments under her confirmed chapter 13 plan. To be sure, the completion of chapter 13 payments is an important benchmark under the Bankruptcy Code.[60] Once this occurs, no further modifications of the plan are possible.[61] Additionally, subject to certain exceptions,[62] "as soon as practicable after completion by the debtor of all payments under the plan ... the court shall grant the debtor a discharge" under section 1328(a).[63] The Court has previously

acknowledged that "shall" ordinarily reflects a statutory command not subject to court discretion.[64] With that in mind, the Court is aware of several cases which hold that a court loses discretion to dismiss a case for bad faith and must enter a discharge after the completion of plan payments.[65] Ultimately, the Court disagrees because these courts underestimate the magnitude of absurd results wrought by a too literal interpretation.[66

..The Supreme Court has repeatedly recognized that

   a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." But in the same breath that we have invoked this "fresh start" policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor."[101]

840

*840 Limiting relief to the "honest but unfortunate debtor" is so enshrined in the Bankruptcy Code that Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[102] when a perceived increase in serial and abusive filings seemingly threatened that foundation.[103] Among other things, the BAPCPA amendments introduced "means testing" as a screening mechanism to ensure bankruptcy relief is "needs-based" and that "debtors repay creditors the maximum they can afford.[104] These reforms also: replaced the presumption in favor of granting the debtor a discharge with a mandatory presumption of abuse triggered by the means test; restricted the relief available to serial filers; imposed a minimum "applicable commitment period" on chapter 13 debtors; and reduced the scope of the chapter 13 discharge.[105] In sum, Congress made manifest its intent to curtail abusive filings and limit bankruptcy relief to the "honest but unfortunate debtor." That is the lens through which the Court must assess the rationality of a literal interpretation of section 1328(a) under these circumstances.

From this perspective, the idea that Congress provided a "wide loophole for the dishonest debtor" should trigger great skepticism. In re Frank seemingly overlooked that because its reasoning appears tainted by confirmation bias. Put simply, the court perceived this statutory "loophole" or "gap" because it fixated on the combination of sections 1330(a) and 1328(e) to the exclusion of everything else. It is hardly surprising that the court found a common signal in favor of finality since it only considered the interplay of two similar provisions that clearly embody that principle. In reality, much of this purported gap is filled by other provisions that cover debtor fraud and misconduct. Although In re Frank seems non-committal on this point,[106] compulsory plan modification and dismissal are indisputably within the statutory bounds before the completion of payments. Factoring that into the equation, the gap is neither so wide as to have been obvious to

lawmakers, nor does it so strongly or uniformly reflect the primacy of finality.

That said, there is a loophole created by reading section 1328(a) to trump all other provisions and it is both arbitrary and leads to absurd results. Essentially, if the rule is that a court is powerless to punish bad faith conduct after payments are completed, then debtors whose bad faith is revealed prior to the entry of discharge can avoid all negative consequences so long as there is insufficient time for anyone to do anything about it. Unlike section

841

*841 1328(e), which sets a deadline for the initiation of revocation proceedings,[107] this reading of section 1328(a) would require that any move against the debtor (such as a motion to dismiss) be concluded prior to the completion of payments.[108] Worse than a shot clock,[109] the final plan payment would moot even a timely attempt to hold the debtor accountable. A debtor also enjoys several innate procedural advantages in this context because the burden to discover misconduct is on a moving party, factual disputes take time to resolve, and payments are one-sided.[110] Thus, while it may be reasonable for Congress to insist that known fraud or misconduct be addressed prior to the discharge or not at all, treating the completion of payments as the final buzzer signaling an abrupt default victory for a bad faith debtor is plainly an unfair and irrational outcome.

But the full implications of construing sections 1307(c) and 1328(a) in this manner are far more distasteful than a debtor running out the clock on a pending contested matter. The "opportunity for mischief,"[111] as apparently downplayed by In re Frank, actually empowers a dishonest debtor to immunize their discharge by disclosing misconduct prior to its entry. A well-timed confession means that the trustee or a party in interest could neither block entry of the discharge by moving for dismissal, nor later seek its revocation because knowledge of the fraud came too early. Section 1328(e)(2) would be rendered a nullity. And, as a practical matter, this result would not only condone the avowed misconduct, but finalize the manipulation by rewarding the bad faith debtor with an undeserved discharge on the cheap. It is inconceivable that Congress, whose stated purpose was to limit bankruptcy relief to the "honest but unfortunate debtor," would countenance an interpretation of the Code that regularly discharges the deceitful but strategically unscrupulous debtor. Even a death bed confession requires some degree of repentance to obtain absolution.

The cases demonstrate that these concerns are not hypothetical. As previously explained, the trustee in In re Frank promptly moved to dismiss upon learning that the debtors concealed a substantial personal injury settlement, but could not beat the debtors' final payment under a plan that paid nothing to unsecured creditors.[112] In In re Parffrey, the debtor short circuited a motion to dismiss and obtained a discharge by completing his final four plan payments early once

it was discovered that he had not filed any post-petition tax returns.[113] Notably, the court found that particularly galling because the case was prompted by the debtor's failure to pay prepetition income taxes, which he likely paid off by diverting funds from postpetition tax obligations.[114] In In re Holman, the court found that the debtors engaged in a pattern of "misreporting or conceal[ing] income, new debt, and asset acquisition and disposition from the Trustee" while using "chapter 13 to drastically modify their home mortgage loans."[115] Despite "flout[ing] their duties" and "violat[ing] both their plan and confirmation order,"[116] the debtors were granted a discharge when the court realized the trial on the motions to dismiss filed by the chapter 13 trustee and the United States Trustee occurred three months after the completion of payments.[117] The district court affirmed, observing "it is an unsatisfying result as it appears that Debtors gamed the system to their advantage."[118]


Ultimately, the Court finds that a plain reading of section 1328(a) in this context would absurdly incentivize bad faith conduct and undermine the foundational principles of the Code. Given that the Supreme Court affirmed the absence of an "Oops" defense to the concealment of assets in Marrama v. Citizens Bank of Massachusetts,[119] there cannot possibly be a "Gotcha!" defense for those who lay bare their sins at the last minute. Rewarding cheaters would also diminish the accomplishments of the honest debtors who work hard to earn a discharge. Accordingly, the Court holds that section 1328(a) does not bar dismissal under section 1307(c) once plan payments have been completed.

  end of quote

  The court also held the BMW was property of the estate :

  Under chapter 13, however, property of the estate also includes "all property of the kind specified in [section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted...."[124] Thus, all legal and equitable interests of the debtor in property acquired during the case—such as a car—is property of the estate and "must be promptly reported to the Court and trustee."[125]


Importantly, a debtor's responsibility to disclose assets does not end at plan confirmation.[126] Nor is that continuing duty an empty gesture or mere procedural technicality. In this district, property of the estate does not re-vest in the debtor until the completion of the plan.[127] As the Court emphasized in In re Zvoch, "the terms of the plan may be revisited at any time before the completion of payments. And just like the debtor, the trustee and unsecured creditors have the right to seek a plan modification."[128] The takeaway, succinctly put by the United States Court of Appeals for the Eleventh Circuit, is that:


  [i]f postconfirmation assets were not subject to disclosure, modifications for increased

payments would be rare because few debtors would voluntarily disclose new assets, and the trustee and creditors would be unlikely to obtain this information from sources other than the debtor.[129]

844

*844 Thus, creditors who are not being paid in full have a keen interest in assets acquired post-petition.

end of quote

As such , here the  $28xxx VW should be  part of the estate.


The Reppert ourt also confirmed a right to dismiss:

The bankruptcy court, after notice and a hearing, may dismiss a chapter 13 case or covert it to chapter 7 for "cause" if it "is in the best interest of creditors and the estate."[138] "Cause" is not defined, but section 1307(c) provides a non-exhaustive list of examples.[139] It is also well-established that a lack of good faith, or the existence of bad faith, is sufficient cause for dismissal under section 1307(c).[140] The United States Court of Appeals for the Third Circuit instructs that "the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances."[141] According to the Third Circuit, the following factors may inform an inquiry into a chapter 13 debtor's good faith:

   (1) the nature of the debt;

   (2) the timing of the petition;

   (3) how the debt arose;

   (4) the debtor's motive in filing the petition;

   (5) how the debtor's actions affected creditors;

(6) the debtor's treatment of creditors both before and after the petition was filed; and

(7) whether the debtor has been forthcoming with the bankruptcy court and the creditors.[142]

846

*846 Given these considerations, the concealment of an asset is typically viewed as indicative of bad faith.[143]

With the Court having found that the BMW is property of the estate, it fell to the Debtor to establish her good faith in the face of her nondisclosure.[144] Curiously, she did not offer, and counsel did not elicit, any testimony to explain why she was not forthcoming about the BMW's existence end of quote

the same should be true here .

The Court starts with the premise that any general unsecured claims would have been entitled to a pro rata share of the BMW's value. Since she scheduled nonpriority unsecured claims totaling $29,150.43,[146] it is fair to assume these claims exist.[147] Had those creditors filed corresponding proofs of claim, a liquidation analysis would have required the plan to pay them in full to be confirmed.[148] Obviously, that is a far better outcome than the 0% dividend the Debtor provided in her confirmed chapter 13 plan.[149] Thus, the failure to disclose the BMW was at least theoretically prejudicial.

...the Court concludes there is ample cause to dismiss this case for bad faith under section 1307(c). But dismissal alone is not an adequate remedy in this case because the concealment of a substantial unencumbered asset warrants a consequence befitting the gravity of the issue and its impact on creditors. Frankly, this is evident from the Debtor's preference that the case be dismissed. To that end, section 349(a) permits the Court to dismiss a case with prejudice to the filing of a subsequent petition.[156] A lack of good faith is sufficient cause for a dismissal with prejudice.[157] Therefore, the only question remaining is the appropriate length of the filing bar.

This same principle of the importance of debtor honesty and compliance was

was confirmed in I N RE NAPIER-LOPEZ, Bankr. Court, D. New Jersey 2023 while unpublished

the case is I n Re: Rosalyn Napier-Lopez, Chapter 13, Debtor.

Case No. 23-10694-ABA. and sets out the overriding importance of disclosure and honesty of a debtor :

. In the hands of the dishonest debtor, however, bankruptcy can be a tool for abuse and fraud.

Fortunately, the Bankruptcy Code contains safeguards to prevent abuse, and the Chapter 13 trustee plays a key role. In a Chapter 13 case, an impartial case trustee, like the Standing Trustee here, is appointed to administer the case and represent the interests of the bankruptcy estate. 11 U.S.C. § 1302. The trustee is responsible for accounting for property received from the debtor, investigating the debtor's financial affairs, and examining creditors' claims. 11 U.S.C. §§ 704, 1302(b)(1); see also 8 Collier on Bankruptcy, ¶ 1302.03 (describing the duties of the Chapter 13 trustee). Section 521(a)(3) and (4) and Fed. R. Bankr. P. 4002 require debtors to cooperate with and provide documents to a trustee in the performance of their duties. The Chapter 13 trustee also holds a meeting of creditors, at which the trustee places the debtor under oath and both the trustee and creditors may ask the debtor questions. 11 U.S.C. § 341(a). In addition to being required to provide documents for this meeting, the debtor is required to attend this meeting, and must, under oath, answer questions. 11 U.S.C. § 343; Fed. R. Bankr. P. 4002. This meeting is a crucial part of the bankruptcy process, as it allows the parties involved to gain a clear understanding of the debtor's financial affairs. This information may be used, for example, to determine whether there are grounds for dismissal of the case, whether a reorganization is feasible, or whether all of the debtor's assets are accurately reflected in the debtor's schedules. See, e.g., In re Lopez, 532 B.R. 140, 146 (Bankr. C.D. Cal. 2015); In re Johnson, 291 B.R. 462, 468 (Bankr. D. Minn. 2003); In re Vilt, 56 B.R. 723, 725 (Bankr. N.D. Ill. 1986).

While the Bankruptcy Code provides significant protections and rights to a debtor, in exchange for those protections and rights, it also imposes duties and responsibilities on a debtor. These duties and responsibilities serve as further safeguards to prevent abuse. See generally 11 U.S.C. § 521. Without question, the necessary prerequisites of good faith and candor, Zick, 931 F.2d at 1129-30, are interwoven into the duties and disclosure requirements placed on debtors by the Bankruptcy Code. Key to the bankruptcy process is the duty of a debtor to file complete and accurate schedules of assets and liabilities, current income and expenditures, executory contracts and unexpired leases, as well as a Statement of Financial Affairs. Id.; Fed. R. Bankr. P. 1007(b)(1); In re Schapiro, No. 96-13357DWS, 1997 WL 367201, at *6 n. 24 (Bankr. E.D. Pa. June 6, 1997) ("A debtor's duty to file complete and accurate schedules, see 11 U.S.C. § 521, is paramount"); In re Green, 141 B.R. 440, 442 (Bankr. M.D. Fla. 1992) (the requirements of § 521(1) are "some of the most important duties of a debtor"; In re Dreyer, 127 B.R. 587, 593 (Bankr. N.D. Tex. 1991) ("The bankruptcy system relies on a debtor to deal honestly with his creditors by making full, complete and honest disclosure in his statements and schedules.") (emphasis added) (citing Hudson v. Wylie, 242 F.2d 435 (9th Cir.), cert. denied, 355 U.S. 828 (1957)). A debtor must also provide the Chapter 13 trustee with a copy of their federal income

tax return for the most recent tax year ending immediately before the commencement of the case, 11 U.S.C. § 521(e)(2)(A). On the bankruptcy petition itself, a debtor must list all creditors with accurate addresses and the amounts and nature of their claims—essentially, basic information. Chapter 13 — Bankruptcy Basics, supra. The debtor must also disclose the "source, amount, and frequency" of their income and expenses, as well as all of their assets and property. Id. Taken together, these disclosure requirements serve the important purposes of preventing fraud and abuse and ensuring a proper case administration. The requirement that debtors list their creditors, for instance, prevents debtors from evading creditors, thus ensuring that they are treated fairly. The requirement that a debtor disclose their assets, income, and property prevents a debtor from concealing assets from creditors, and in turn facilitates a fair distribution of those assets in accordance with the intent and purposes of Chapter 13 and the Bankruptcy Code. See, e.g., In re Bossart, 05-34015-H4-7, 2007 WL 4561300, at *16 (Bankr. S.D. Tex. Dec. 21, 2007), aff'd sub nom, Bossart v. Havis, 389 B.R. 511 (S.D. Tex. 2008), aff'd sub nom, In re Bossart, 296 Fed. App'x. 398 (5th Cir. 2008). Finally, Chapter 13 debtors must pay filing fees, 28 U.S.C. § 1930; Fed. R. Bankr. P. 1006, and have "an ongoing duty to pay postpetition obligations" like rent, when due. In re Danastorg, 382 B.R. 585, 588 (Bankr. D. Mass. 2008); see Lamarche v. Miles, 416 B.R. 53, 58 (E.D.N.Y. 2009) (recognizing "a tenant's obligations to make payments to a landlord where a Chapter 13 petition has been filed") and In re Watkins, No. 06-CV-1341 (DGT), 2008 WL 708413, at *4 (E.D.N.Y. Mar. 14, 2008) (stating that, in the context of a Chapter 13 case, "the failure of a tenant to . . . comply with rental obligations constitutes cause to lift the automatic stay under § 362(d)(1).").


By requiring debtors to provide basic, accurate, and complete information to, and cooperate with, the Chapter 13 trustee, these disclosure requirements promote transparency and enable the Chapter 13 trustee and creditors to make informed decisions about how to proceed. In re Dupal, 10-62362, 2011 WL 2213975, at *3 (Bankr. N.D. Ohio June 7, 2011) ("Full disclosure allows the trustee and creditors the opportunity to examine and investigate a debtor's financial transactions and pre-bankruptcy dealings to make informed decisions. When debtor is not forthright, the system is denigrated."). Importantly, these disclosure requirements serve as a safeguard that promotes the proper and efficient administration of the bankruptcy estate by enabling the Chapter 13 trustee to conduct their duties, administer the bankruptcy estate, and make distributions to creditors. In exchange, the honest but unfortunate debtor earns the protections and rights afforded by Chapter 13 of the Bankruptcy Code.


...To remain in bankruptcy, however, a debtor must play by the rules. When they do not, there are ramifications. The Bankruptcy Code provides that a bankruptcy court may, on the request of a party in interest or the United States trustee, and after notice and a hearing, dismiss a case for cause. 11 U.S.C. § 1307(c). Under subsection (c), a debtor's lack of good faith in filing for bankruptcy is, standing alone, sufficient cause for dismissal. In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996). "The good faith requirement is the `policing mechanism' that ensures those who invoke the reorganization processes of Chapter 13 do so only to accomplish the objectives of

bankruptcy policy." In re Parson, 632 B.R. 613, 625 (Bankr. N.D. Tex. 2021).

While the onus is on the objecting party to move for dismissal, once the objecting party calls into question a petitioner's good faith, the burden shifts to the debtor to prove their good faith. In re Tamecki, 229 F.3d 205, 207 (3d Cir. 2000)....

There is no single test or bright-line rule that courts use to determine whether a debtor is acting in good faith. Rather, good faith must be assessed on a case-by-case basis, in light of the totality of the circumstances. In re Lilley, 91 F.3d at 496. In assessing a debtor's good faith, relevant factors include, but are not limited to, "the nature of the debt; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." In re Mondelli, 558 F. App'x 260, 263 (3d Cir. 2014) (citing In re Lilley). The court may also consider the history of prior bankruptcy proceedings, including previous petitions. Id. But, "the Court does not need to find any fraudulent intent by the debtor in her Chapter 13 filing" when determining a lack of good faith. In re Parson, 632 B.R. at 626...See In re Hickman, 616 B.R. 815, 823 (Bankr. W.D. Okla. 2020) (citing Grassmann v. Brown (In re Brown), 570 B.R. 98, 116 (Bankr. W.D. Okla. 2017)) (failure to amend schedules after becoming aware of their inaccuracies is additional indicia of a debtor's reckless indifference to the truth); In re Taal, 520 B.R. 370, 376 (Bankr. D.N.H. 2014) (citing Marrama v. Citizens Bank (In re Marrama), 430 F.3d 474, 478 (1st Cir. 2005) (stating that debtors seeking bankruptcy relief may not "play fast and loose with their assets or with the reality of their affairs.")); In re Letsche, 234 B.R. 208, 214 (Bankr. D. Mass. 1999) ("Such a cavalier approach to documents that must be filed under the pains and penalties of perjury compels the Court to find that the Debtors neither filed their Chapter 13 case or proposed their Chapter 13 plans in good faith."); In re Kasal, 217 B.R. 727, 734 (Bankr. E.D. Pa.), aff'd sub nom, Casey v. Kasal, 223 B.R. 879 (E.D. Pa. 1998) ("The debtor is imposed with a paramount duty to carefully consider all questions included in the Schedules and Statement and see that each is answered accurately and completely.")...

lack of good faith in this case is further evidenced by her woefully deficient schedules that are riddled with inaccuracies, misrepresentations, inconsistencies, and omissions in this case alone. Bankruptcy requires that debtors be honest and forthcoming with the court and with their creditors, and failure to do so is evidence of bad faith. In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996). "Accurate and honest disclosure of income is crucial to an evaluation of a debtor's good faith, and a debtor's concealing of a source of income may support a finding of bad faith." In re Ladieu, No. 14-10551, 2015 WL 3503941, at *13 (Bankr. D. Vt. June 1, 2015). The court "considers a debtor's duty to file true and complete schedules to be of immense significance when it evaluates whether a debtor has acted in bad faith." In re Gutierrez, 528 B.R. 1, 23 (Bankr. D. Vt. 2014).\\

  End of quote

As such there is and was good faith on the objection, as even supported by the above and right to see the car is part of the bankruptcy estate and to the extent needed so moves for same to be included at its full value

Wherefore   Creditor moves for same and all relief .

By  Susan H Mello MO Bar 31158

for Susan H Mello and Susan H Mello LLC

415  Tuxedo

St Louis Mo   631119

314  721 7521

SusanMello@gmail.com

for  Movant /Creditor. Certificate of Service

The  undersigned served a copy  per the court's procedures where there is no one not on the list of those to be sent or  entitled to notice who would not already  be receiving copies from the court  on 6/16/23 /s/  Susan  Mello